# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JILL BEZEK, et al., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-17-2902 |
| FIRST MARINER BANK, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Class Action Complaint in this case alleges in one count that the Defendant, First Mariner Bank ("First Mariner"), violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a) and (b), by entering into a kickback scheme whereby the Defendant received unearned fees from Genuine Title, LLC for referrals. Now pending is the Defendant's Motion to Dismiss (ECF No. 4). This Court reviewed the parties' submissions and conducted a motions hearing on January 16, 2018.[1] For the reasons stated below, the Defendant's Motion to Dismiss (ECF No. 4) is GRANTED.

## BACKGROUND

### I. *Fangman v. Genuine Title* (RDB-14-0081)

The alleged kickback scheme in this case involves Genuine Title, LLC ("Genuine Title"), which has an extensive history with this Court. In December 2013, Edward and Vickie Fangman (represented by the same counsel involved in this case) filed a complaint against Genuine Title involving essentially identical allegations in the Circuit Court of

---

[1] At the request of counsel, this Court conducted a *consolidated* motions hearing for five cases related to Genuine Title's alleged kickback scheme with various financial institutions. (*See* Background, *infra*.)

1

Baltimore County that was removed to this Court in January 2014. (*See Fangman v. Genuine Title, LLC*, Case No. RDB-14-0081 (D. Md.), at ECF No. 1 ("*Fangman*").) The Fangmans alleged that Genuine Title, in exchange for the referral of title services on their mortgage loan, paid cash kickbacks to loan brokers and provided "marketing materials for free or at a drastically-reduced rate (collectively 'Free Marketing Materials') for various loan officers who were part of the mortgage lending process." (*Fangman,* Compl. ¶¶ 19-23, ECF No. 2.)[2]

As a part of discovery in the *Fangman* action, Plaintiffs' counsel served a document subpoena on First Mariner Bank on July 14, 2014. (*Fangman*, ECF No. 150-3 at 126-30, hereinafter "First Mariner Subpoena".) That subpoena requests that First Mariner produce records relating to:

(1) First Mariner's employment of Angela Pobletts;
(2) marketing materials provided or paid for by Genuine Title;
(3) payments, incentives and/or prizes received from Genuine Title;
(4) communications with Genuine Title without any limitations; and
(5) First Mariner's relationship with Genuine Title.

(*Bezek*, Mem. 7-8, ECF No. 4-2 (citing First Mariner Subpoena, Ex. 1).)

Genuine Title went bankrupt in 2014, and Plaintiffs' counsel, Smith, Gildea, & Schmidt, began to obtain access from Genuine Title's Receiver to the company's documents and records, including its computer servers. (*Bezek*, Mem. 17, ECF No. 4-2.) In early 2015, Plaintiffs' counsel used these records to identify and notify affected borrowers and prospective plaintiffs. (*Id.*) By June 2015, Plaintiffs' counsel was "able to pull data . . . that appears to represent . . . buyers' names, addresses, telephone numbers, property addresses,

---

[2] Even prior to the *Fangman* suit, in December 2012, a putative class action alleging the same kickback scheme was filed against Genuine Title and a number of financial institutions. *Roach v. Wells Fargo Bank, N.A.*, Case No. WDQ-l2-03800 (D. Md.). The Plaintiffs in that case voluntarily dismissed their claims in April 2013. (*See* ECF Nos. 36, 37, 39.)

settlement dates, lender and in some cases mortgage broker information." (*Id.*18 (quoting *Fangman*, ECF No. 150-2 at 7)).

On January 2, 2015, plaintiffs in *Fangman* filed a First Amended Complaint naming other financial institutions. (*See Fangman*, ECF No. 47.) That First Amended Complaint in *Fangman* alleged violations of RESPA, Maryland's state-law analog to RESPA, and the Maryland Consumer Protection Act. (*See id.*) The *Fangman* plaintiffs further alleged that Genuine Title and its affiliated marketing companies provided Free Marketing Materials and/or "Referring Cash" payments without disclosure on HUD-1 settlement documents. (*Id.* ¶ 3.) Plaintiffs in *Fangman* filed a Second Amended Complaint on May 20, 2015, adding additional parties and clarifying some of their previous allegations. (*See Fangman*, ECF No. 138.)

In addressing motions to dismiss by various defendants in the *Fangman* case, this Court ruled that equitable tolling may be available under RESPA and that those plaintiffs' claims were not time-barred. *Fangman*, 2015 WL 8315704, at *7. In so holding, this Court applied the equitable tolling test from *Grant v. Shapiro*, 871 F.Supp.2d 462 (D. Md. 1998), that provides, "a plaintiff must allege with specificity fraudulent concealment on the part of the defendants and the inability of the plaintiff, despite due diligence, to discover the fraud." *Fangman*, 2015 WL 8315704, at *7 (citing *Grant*, 871 F.Supp.2d at 470, n.10). This Court applied that test in the *Fangman* action in the context of Plaintiffs' counsel's significant investigatory efforts, which by June 2015 had successfully identified borrowers referred to Genuine Title between 2006 through 2013. *See Fangman*, 2016 WL 6600509, at *2 (D. Md. Nov. 8, 2016). Accordingly, this Court found in December 2015 that facts had been sufficiently concealed from the *Fangman* plaintiffs, who did not know about their claim until

3

contacted by counsel. *Fangman*, 2015 WL 8315704, at *7. In terms of due diligence, this Court found:

> Plaintiffs' counsel has undergone a large-scale review of Defendant Genuine Title's computer system. It is only through this review, aided by early discovery and a proprietary software system, that potential plaintiffs have been identified. The Second Amended Complaint, filed by Plaintiffs' counsel, clearly states that "[a]ll Plaintiffs learned of the illegal kickbacks less than one year prior to filing of the [Second Amended] Complaint and could not have known about the Kickback Scheme until contacted by undersigned counsel." Second Am. Compl. at ¶ 94, ECF No. 138. In light of these unique circumstances, Plaintiffs have demonstrated that equitable tolling is warranted in this case and that all Plaintiffs, with the exception of the Eagle National Plaintiffs, brought their claims within one year of the date they could have first known of their cause of action through due diligence.

*Fangman,* 2015 WL 8315704, at *7.

Following discovery concerning Genuine Title's business practices and relationship with other lenders, some defendants (e.g., Wells Fargo, JP Morgan Chase, and PNC) have struck class settlements which have been the subject of public filings and class notices. (*See, e.g., Fangman*, ECF No. 479, Final Approval Order regarding PNC settlement.)

## II. Enforcement Actions by the federal Consumer Financial Protection Bureau and Maryland Attorney General

Meanwhile, the Consumer Financial Protection Bureau ("CFPB") and the Maryland Attorney General initiated an enforcement action in this Court on January 22, 2015 against Wells Fargo Bank, N.A. and JPMorgan Chase Bank, N.A. predicated on similar schemes involving Genuine Title. (*See CFPB v. Wells Fargo Bank, N.A.*, Case No. RDB-15-0179 (D. Md.) ("*Lender Enforcement Action*").) The pendency and ultimate settlement of the *Lender Enforcement Action* in January 2015 was widely publicized. Specifically, the CFPB issued a press release on January 22, 2015, and local and national news media, including *The Baltimore*

*Sun*, CNN, and the *Wall Street Journal*, published stories about the case. (*See Dobbins, et al. v. Bank of America*, *N.A.*, RDB-17-540 (D. Md.), ECF Nos. 17-3, 17-4.)[3]

The CFPB and Attorney General also filed an enforcement action on April 29, 2015 directly against Genuine Title, its principals, and affiliates arising out of the same alleged scheme. (*See CFPB v. Genuine Title LLC*, Case No. RDB-15-1235 (D. Md.) ("*Genuine Title Enforcement Action*")). The CFPB issued a press release on April 29, 2015 in which the CFPB outlined the enforcement action against Genuine Title based on the same facts alleged by the *Fangman* plaintiffs. On May 1, 2015, the CFPB and Maryland Attorney General announced a settlement with Genuine Title, and this Court entered a Stipulated Final Judgment and Order approving the settlement. (*See Genuine Title Enforcement Action*, ECF No. 18.) As with the *Lender Enforcement Action*, the *Genuine Title Enforcement Action* settlement was also reported by various news media outlets and other publications in May 2015. (*See Dobbins,* ECF No. 17-4.) The settlement orders in these enforcement actions explicitly contemplate related litigation by affected consumers (*see, e.g., Genuine Title Enforcement Action*, Genuine Title Order 5, ECF No. 18), but neither the Consumer Financial Protection Bureau nor the Office of the Attorney General of Maryland required that any financial institutions issue formal notices to the public (*see Lender Enforcement Action*, JPMorgan Chase Order, ECF No. 10; *Lender Enforcement Action*, Wells Fargo Order, ECF No. 11).

## I. *Bezek et al v. First Mariner Bank* (RDB-17-2902)

Plaintiff Jill Bezek closed on the refinancing of her residential mortgage loan in December 2010, and Plaintiff Michelle Harris closed on the refinancing of her residential

---

[3] At the consolidated hearing in this case, *see* Background, Section IV, *infra*, this Court and the parties discussed and directly referenced press releases and an exemplar list of news articles that were attached as exhibits to the motions to dismiss in *Dobbins, et al. v. Bank of America, N.A.,* Civil Case No. RDB-17-540 (D. Md.) and *Bezek, et al. v. First Mariner Bank*, Civil Case No. RDB-17-2902 (D. Md.).

mortgage loan in October 2012. (Compl. ¶¶ 63, 72, ECF No. 1.) On September 29, 2017, Plaintiffs jointly filed this action alleging that both Ms. Bezek and Ms. Harris refinanced their homes through Tony Sergi, who was a branch manager of First Mariner. (Compl. ¶¶ 55, 63, 72, ECF No. 1.) Mr. Sergi, who worked in the same branch office as Angela Pobletts, allegedly referred Plaintiffs to Genuine Title in exchange for "Referring Cash" paid through Competitive Advantage Media Group ("CAM"), a company formed by Brandon Glickstein, Genuine Title's lead marketing and account representative. (*Id.* ¶¶ 20, 65, 73.) Plaintiffs seek to represent the following purported class:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) originated or brokered by First Mariner Bank for which Genuine Title provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2009, and December 31, 2014. Exempted from this class is any person who, during the period of January 1, 2009 through December 31, 2014, was an employee, officer, member and/or agent of First Mariner Bank, Genuine Title, LLC, Competitive Advantage Media Group, LLC, Brandon Glickstein, Inc., and/or Dog Days Marketing, LLC.

(Compl. ¶ 92.) Defendant First Mariner filed the currently pending Motion to Dismiss (ECF No. 4) on October 23, 2017.

### III. Consolidated Hearing on Motions to Dismiss

Plaintiffs' counsel, who has been in possession of Genuine Title's records since 2014 and who processed the data – including buyers' names – by June 2015, has filed the following seven class actions against other lenders who, like the defendants in *Fangman*, allegedly engaged in kickback schemes with Genuine Title.

1. *Edmondson v. Eagle National Bank, et al.,* Civil Case No. RDB-16-3938 (D. Md.)
2. *Dobbins, et al. v. Bank of America, N.A.,* Civil Case No. RDB-17-540 (D. Md.)
3. *Callum v. Priority Financial Services,* Civil Case No. RDB-17-0623 (D. Md.)
4. *James v. Acre Mortgage & Financial,* Civil Case No. RDB-17-1734 (D. Md.)
5. *Baugh, et al. v. The Federal Savings Bank,* Civil Case No. RDB-17-1735 (D. Md.)

6. *Ryman v. First Mortgage Corporation*, Civil Case No. RDB-17-1757 (D. Md.)
7. *Bezek, et al. v. First Mariner Bank*, Civil Case No. RDB-17-2902 (D. Md.)

On October 31, 2017, Miles & Stockbridge, defense counsel in both *Edmondson* (RDB-16-3938) and *Bezek* (RDB-17-2902), requested a consolidated hearing on ripe motions to dismiss. (*Bezek*, ECF No. 5.) Plaintiffs' counsel, Smith, Gildea & Schmidt, agreed to a consolidated hearing for the ripe motions to dismiss in five of the seven cases – namely, *Edmondson* (RDB-16-3938); *Dobbins* (RDB-17-540); *James* (RDB-17-1734); *Baugh* (RDB-17-1735); and *Bezek* (RDB-17-2902). (*See Bezek*, ECF No. 6.)[4] Generally, the motions to dismiss in these five cases present statute of limitations and equitable tolling issues. This Court conducted the requested consolidated hearing on January 16, 2018.

## STANDARD OF REVIEW

### I. Rule 8(a)(2) and Rule 12(b)(6) Generally

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Rule 12(b)(6) authorizes the dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citation omitted). "A formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

---

[4] Plaintiffs' counsel requested that *Callum* (RDB-17-0623) and *Ryman* (RDB-17-1757) be addressed separately. (*Edmondson*, ECF No. 21.) *Callum* is currently stayed pending settlement-related discovery. (*See Callum*, ECF No. 10.) *Ryman* "involves complex successor liability and jurisdictional issues not present in most of the other cases." (*Edmondson*, ECF No. 21.)

(2007) (citation omitted). Similarly, "an unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Statute of Limitations & Equitable Tolling

A 12(b)(6) motion is an appropriate vehicle through which the Court may evaluate the affirmative defense of the statute of limitations "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).

Even if a statute of limitations defense appears to have merit based upon the face of the complaint, a Court may exercise its equitable authority to toll the statute of limitations.[5] *Fangman*, 2015 WL 8315704, at *7 (citing *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1630 (2015); *Grant v. Shapiro & Burson, LLP, et al.*, 871 F. Supp. 2d 462, 470 n.10 (D. Md. 2012)). In *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750 (2016), a *unanimous* United States Supreme Court held that equitable tolling requires the plaintiff to establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." 136 S. Ct. at 755 (quoting *Holland v. Florida,* 560 U.S. 631, 649 (2010). The Supreme Court emphasized these two requirements as "elements, not merely factors of indeterminate or commensurable weight." 136 S. Ct. at 756 (internal quotation marks omitted) (citing *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)). While Plaintiffs argue that *Menominee's* test does not control this action because

---

[5] As this Court confirmed in *Fangman*, equitable tolling applies to RESPA claims. *Fangman,* No. CV RDB-14-0081, 2015 WL 8315704, at *7 (citing *Kwai Fun Wong*, 135 S. Ct. at 1630; *Grant.*, 871 F. Supp. 2d at 470 n.10 (D. Md. 2012)).

8

it is limited to the habeas context, (Mem. Opp'n 4 n.3, ECF No. 7-1), the Supreme Court in *Menominee* applied the test to a contracts case, and the decision admits of no exceptions to the test's applicability. Furthermore, the Fourth Circuit applied the *Menominee* test to a tax appeal claim in *Cunningham v. Commissioner of Internal Revenue*, No. 17-1433, 2018 WL 460854, at *2 (4th Cir. Jan. 18, 2018) (unpublished). Other circuits have applied the *Menominee* test in numerous other contexts as well. *E.g., Knauf Insulation, Inc. v. Southern Brands, Inc.*, 820 F.3d 904, 907-10 (7th Cir. 2016) (Sherman Act claim); *Villarreal v. R.J. Reynolds Tobacco Co., Pinstripe, Inc.*, 839 F.3d 958, 970-73 (11th Cir. 2016) (age discrimination claim).[6]

The Supreme Court has held that "the diligence prong . . . covers those affairs within the litigant's control." 136 S. Ct. at 756. This element requires "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653. The second element "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee,* 136 S. Ct. at 756. In other words, the circumstances must combine to render "critical information . . . undiscoverable." *Gould v. U.S. H.H.S*, 905 F.2d 738, 745–46 (4th Cir. 1990) (en banc). Courts have consistently held that fraudulent concealment by the defendant is a circumstance that may justify equitable tolling. *E.g., Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,* 7l F.3d 119, 122 (4th Cir. 1995); *Grant*, 871 F.Supp.2d at 470, n.10.

The United States Court of Appeals for the Fourth Circuit has emphasized that "equitable tolling is appropriate 'in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Cunningham v. Comm'r of Internal*

---

[6] In applying this test to the facts of the *Menominee* case, the Supreme Court found "no extraordinary circumstances" and therefore it had no need to "decide whether the Tribe was diligently pursuing its rights." 136 S. Ct. at 757, n.5.

9

*Revenue*, No. 17-1433, 2018 WL 460854, at *2 (4th Cir. Jan. 18, 2018) (internal quotation marks omitted) (quoting *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc)). Federal courts employ equitable tolling "sparingly," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), as it is "a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007).

## **DISCUSSION**

The Plaintiffs concede that RESPA's one-year statute of limitations would bar this lawsuit, which was filed almost five years years after the Plaintiffs closed their loans and two years after Plaintiffs' counsel processed Genuine Title's data. However, the parties dispute whether equitable tolling saves the Plaintiffs' claim.

### I. Materials Considered

As an initial matter, the Defendant asks this Court to consider materials that are not integral to the Complaint (e.g., court filings and news coverage related to the *Fangman* and CFPB and Maryland Attorney General enforcement actions). (Mem. 6 n.2, 9 n.3, ECF No. 4-2.) The Plaintiffs acknowledge that this Court may take judicial notice of items or matters in the public record, but contends that (a) the securities fraud cases cited by the Defendant do not support judicial notice of news articles in this case, (b) newspaper articles are inadmissible hearsay, and (c) the First Mariner Subpoena in *Fangman* does not qualify for the public record exception because it is a "proverbial needle[] in a haystack." (Mem. Opp'n 15-19, ECF No. 7-1.)

In considering a motion under Rule 12(b)(6), a district court may consider "documents incorporated into the complaint by reference, and matters of which a court may

10

take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *accord Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). A court may take judicial notice of "docket entries, pleadings and papers in other cases," *Brown v. Ocwen Loan Servicing, LLC*, PJM–14–3454, 2015 WL 5008763, *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x. 200 (4th Cir. May 6, 2016); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records") (quoting 21 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5106 at 505 (1977))), as well as "newspaper articles, analysts' reports, and press releases," *In re Human Genome Sciences Inc. Sec. Litig.*, 933 F. Supp. 2d 751, 758 (D. Md. 2013); *accord Sha v. GenVec Inc.*, No. DKC-12-00341, 2013 WL 5348133, *1 n.2 (D. Md. Sept. 20, 2013).[7] The rule against hearsay does not bar materials offered to establish the date of public notice rather than the truth of the matter asserted. *See In re Human Genome*, 933 F. Supp. 2d at 758.

This Court finds that the court filings and news articles offered by the Defendant will help resolve the question of equitable tolling by establishing various dates of notice, rather than the truth of the matter asserted. Regarding the First Mariner Subpoena in the *Fangman*

---

[7] While frequently relevant to evaluating the stock markets' knowledge in securities fraud cases, press coverage may also be relevant to evaluating discoverable information in the context of equitable tolling. Plaintiffs argue that the heightened pleading standard in the securities context renders *In re Human Genome Sciences Inc. Sec. Litig.*,933 F. Supp.2d 151, inapposite, but pleading *fraudulent* concealment in an equitable tolling claim must also meet the heightened particularity standard of Rule 9 of the Federal Rules of Civil Procedure. *See Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 331 (M.D.N.C. 2002); *Minter v. Wells Fargo Bank*, N.A.,675 F. Supp. 2d 591,596 (D. Md. 2009). Neither of these pleading standards change the standard for judicial notice under Rule 201(b)(2) of the Federal Rules of Evidence, which asks whether "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Indeed, the existence and availability of government notifications, press releases, and other media coverage have been the subject of judicial notice in various contexts. *Timothy v. Boston Sci. Corp.*, 665 F. App'x 295, 298 n.4 (4th Cir. 2016) (unpublished)(online FDA notification in a products liability action); *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 720 n.48 (10th Cir. 2009) (state press release in an environmental action); *U.S. v. Cauble*, 532 F.Supp. 804 (E.D.Tex.1982) *aff'd* 757 F.2d 282 (geographic availability of television broadcasts in a criminal action). The securities context simply makes the markets' knowledge on a specific date a relevant consideration. In the equitable tolling context, the discoverability of information on a specific date is an essential consideration. *Gould,*905 F.2d at 745–46.

action (*Fangman*, ECF No. 150-3 at 126-30), Plaintiffs' argument that it would be hard to find among the *Fangman* filings does not limit its status as a matter of court record subject to judicial notice, especially when Plaintiffs make no challenge to the document's authenticity, accuracy, or admissibility under the rule against hearsay. *See* 21B Wright & Miller, *Federal Practice & Procedure* § 5106.4 (2d ed. 2017) (discussing hearsay as the primary limitation on noticing court records). The consideration of these materials through judicial notice does not transform this Motion to Dismiss into one for summary judgment. *See Tellabs,* 551 U.S. at 322 (2007); *Philips*, 572 F.3d at 180.

## II. Equitable Tolling

### A. Due Diligence

The parties have devoted considerable briefing and oral argument to disputing the content of the due diligence requirement in the wake of *Menominee*, 136 S. Ct. 750. Defendant argues that *Menominee* raised the bar to require affirmative acts of diligence even if the Plaintiffs had no inquiry notice of the need to pursue their rights in the first place. In response, the Plaintiffs note language in the Fourth Circuit opinion in *Supermarket of Marlinton* permitting a plaintiff to satisfy that diligence requirement by establishing that she "was not (and should not have been) aware of facts that should have excited further inquiry." 71 F.3d at 128. Defendant argues that inquiry notice, which is part of the discovery rule, "has no place in a RESPA statute of limitations decision." (Reply 8, ECF No. 8 (citing *Mullinax v. Radian Guar., Inc.,* 199 F. Supp. 2d 311, 324 (M.D.N.C. 2002); *Macauley v. Estate of Nicholas,* 7 F. Supp. 3d 468, 487 n.16 (E.D. Pa. 2014); *Stephens v. Bank of Am. Home Loans, Inc.*, No. 5:16-CV-660-F, 2017 WL 384315 at *4-7 (E.D.N.C. Jan. 25, 2017)).)

The parties further disagree on whether the efforts and knowledge of Plaintiffs' counsel may stand in for the Plaintiffs' own diligence to fulfill whatever level of diligence is required after *Menominee*. Plaintiffs assert that they cannot be charged with the knowledge of their own attorneys from before the attorney-client relationship was established. (Mem. Opp'n 25, ECF No. 7-1.) If judged by Plaintiffs' own conduct, Defendant asserts that the Complaint does not include "*any* allegation of *any* specific inquiry or diligence." (Mem. 11, ECF No. 4-2.) Defendant asks this Court to follow *Cunningham v. M&T Bank Corp.*, 814 F.3d 156 (3d Cir. 2016), in rejecting the "lawyerly intervention" theory and in finding that Plaintiffs' participation in the loan transaction does not by itself fulfill due diligence.

Even if Plaintiffs can establish that they were "pursuing [their] rights diligently," *Menominee*, 136 S. Ct. at 755, with or without credit for counsel's actions, this Court cannot ignore the role Plaintiffs' counsel has played in determining the timing of this action – and the other pending cases related to the Genuine Title kickback scheme. In June 2015, Plaintiffs' counsel had access to Genuine Title's "buyers' names, addresses, telephone numbers, property addresses, settlement dates, lender and in some cases mortgage broker information," (Mem. 18, ECF No. 4-2 (quoting *Fangman*, ECF No. 150-2 at 7)), information sufficient to uncover the scheme in this case. Even if Plaintiffs' counsel's knowledge is not relevant to the due diligence analysis, counsel's in-depth investigation into Genuine Title's records certainly bears heavily on the question of whether "extraordinary circumstances" stood in Plaintiffs' way and prevented timely filing. *Menominee*, 136 S. Ct. at 755.

### B. Extraordinary Circumstances

In an effort to establish the "extraordinary circumstances" element, the Plaintiffs assert that "affirmative misrepresentations on HUD-1 forms constitute independent acts of

concealment," (Mem. Opp'n 8, ECF No. 7-1 (citing *In re Community Bank of No. Va. Mortg. Lending Prac. Litig., PNC Bank N.A.*, 795 F.3d 380, 403 (3d Cir. 2015)), and that the Defendant entered into backdated "sham title services agreements" to further conceal the kickback scheme (Mem. Opp'n 5). At oral argument, Plaintiffs claimed that the Defendant's *ongoing* failure to disclose the true nature of its relationship with Genuine Title by sending notices to all customers known to have used Genuine Title's services constitutes an act of *continued* concealment by the Defendant. Under these circumstances, Plaintiffs contend that they have satisfied the extraordinary circumstances element because they "could not have known about this illegal Kickback Scheme until contacted by counsel on or about August 24, 2017." (*Id.* 12 (citing Compl. at ¶¶ 95, 97, 117).)

The Defendant argues that Plaintiffs failed to plead fraudulent concealment with particularity, especially when nondisclosure on a HUD-1 is insufficient to warrant equitable tolling of a RESPA violation claim. (*See* Reply 18-20, ECF No. 8.) The Defendant generally argues that Plaintiffs' theory "re-writes RESPA and makes Plaintiffs' counsel – and not the terms of the legislation passed by Congress – the master of the RESPA statute of limitation." (Mem. 5, ECF No. 4-2.)

Even assuming *arguendo* that the initial HUD-1 non-disclosure and alleged "sham" agreements establish fraudulent concealment with sufficient particularity,[8] the circumstances causing Plaintiffs' delay were not "extraordinary" nor were the circumstances "beyond [their] control." *Menominee,* 136 S. Ct. at 756. Plaintiffs' counsel filed suit against Genuine Title back in December 2013, subpoenaed Defendant First Mariner regarding its relationship with Genuine Title in July 2014, and acknowledged comprehensive access to Genuine Title's data

---

[8] This assumption is consistent with this Court's holding in *Fangman*, 2015 WL 8315704, at *7.

14

by June 2015. (*Fangman*, ECF Nos. 1, 150-3, 150-2.) Accordingly, the Defendant's alleged continuing fraudulent concealment was simply not the only circumstance delaying the filing of this lawsuit. In spite of this fact, Plaintiffs argue that this Court should focus on the Defendant's "ongoing" failure to broadly notify customers of a potential claim related to Genuine Title. (*See* Mem. Opp'n 16 n.11, ECF No. 7-1.) Plaintiffs' view of equitable tolling essentially demands that this Court order the Defendant, and similarly situated lenders, to send out such notices to stop the ongoing equitable tolling of any RESPA claim by any Genuine Title customer. This theory swallows RESPA's one-year statute of limitations, which was set by Congress, and asks this Court to regulate lenders in a way that was specifically not requested by those federal and state enforcement agencies that have actively investigated Genuine Title and its associated financial institutions. (*See Lender Enforcement Action* (RDB-15-0179), JPMorgan Chase Order, ECF No. 10; *Lender Enforcement Action*, Wells Fargo Order, ECF No. 11.)[9]

Furthermore, the Defendant's alleged concealment effort did not "st[and] in [Plaintiffs'] way" up until the time they were contacted by counsel. *Menominee*, 136 S. Ct. at 755. In other words, it was *within the Plaintiffs' control* to discover a basis for their action in May 2015 at the latest,[10] more than two years prior to being contacted by counsel on August 24, 2017 and filing the Complaint on September 29, 2017. *See id.* at 756. Unlike in the *Fangman* case, the Plaintiffs in this case could have discovered a substantial amount of public

---

[9] Plaintiffs' counsel's oral argument to the contrary is belied by the plain text of the settlement orders.
[10] This time period is when the *Genuine Title Enforcement Action* settlement was reported by various media outlets and publications (*see Dobbins,* ECF No. 17-4), but this Court notes that Plaintiffs' claims may have been discoverable even earlier. In January 2, 2015, plaintiffs in *Fangman* filed a First Amended Complaint naming other financial institutions, including Eagle National Bank. (*See Fangman*, ECF No. 47.) On January 22, 2015, the CFPB and the Maryland Attorney General issued a press release regarding their joint enforcement action against Wells Fargo Bank, N.A. and JPMorgan Chase Bank, N.A. (*Dobbins*, ECF No. 17-3.), and local and national news media, including *The Baltimore Sun*, CNN, and the *Wall Street Journal*, published stories about the case (*see Dobbins*, ECF No. 17-4). In April 2015, the CFPB and Attorney General filed an enforcement action directly against Genuine Title, its principals, and affiliates arising out of the same alleged scheme. (*Genuine Title Enforcement Action*, RDB-15-1235, ECF No. 1).

information on Genuine Title's illegal scheme that was brought to light through the *Fangman* and enforcement litigation. The publicly available information was sufficiently specific and applicable to the Plaintiffs that contact by counsel was not the only method by which they could have learned of their claim. Although Plaintiffs argue that the public record does not specifically mention First Mariner or Tony Sergi, Plaintiffs do not dispute that in 2010 and 2012 they knowingly used Genuine Title for their title and settlement services. (*See* Compl. ¶¶ 64, 73, ECF No. 1.) Plaintiffs here allege that Genuine Title provided kickbacks to First Mariner in the form of referring cash, free marketing materials, and marketing credits (*id.* ¶¶ 17-7), the same methods alleged in *Fangman* (*see Fangman*, Second Am. Compl. 9-12, ECF No. 138), the *Genuine Title Enforcement Action* (*see* RDB-15-1235, Compl. 9-10, ECF No. 1), and the *Lender Enforcement Action* (*see* RDB-15-0179, Compl. 3, 5, ECF No. 1). These three lawsuits produced public court records and publicly available news coverage on the same Genuine Title practices at issue in this case. (*See Bezek*, ECF Nos. 4-4 through 4-9.)

The Plaintiffs have made no allegation that the Defendant's actions or a lack of access to public records, news, the internet, TV, or a phone placed such information outside their reach.[11] They merely argue that they were not yet on "notice" of the need to search for such information. The issue of notice, however, is not relevant to the extraordinary circumstances analysis, which asks whether the circumstances combine to render "critical information, *reasonable investigation notwithstanding*, undiscoverable." *Gould*, 905 F.2d at 745–46 (emphasis added); *see also Supermarket of Marlinton*, 7l F.3d at 122 (requiring the plaintiff to show that it "failed to discover those facts within the statutory period, despite . . . the

---

[11] Plaintiffs note that at least one of the news sources offered by the Defendant "require a subscription to view" (Mem. Opp'n 18 n.13, ECF No. 7-1), but there is no allegation that Plaintiffs were unable to view a print copy, initiate a free trial, or purchase a subscription. Again, any subscription requirements did not place the news coverage outside Plaintiffs' control, and Plaintiffs do not allege any lack of access to the public court filings in the *Fangman* and enforcement actions.

exercise of due diligence"). To consider notice or only that quantum of information discoverable by Plaintiffs' reasonable diligence would essentially ignore the Supreme Court's holding in *Menominee,* 136 S. Ct. at 756, that diligence and extraordinary circumstances are two distinct elements. The Fourth Circuit's use of "notwithstanding" in *Gould*, 905 F.2d at 745–46, and "despite" in *Supermarket of Marlinton*, 7l F.3d at 122, underscore that these elements must exist *simultaneously*, with the extraordinary circumstances placing the discovery of critical information entirely outside the Plaintiffs' control.

In *Fangman*, this Court found that the Defendants' concealment efforts contributed to "unique" circumstances warranting equitable tolling, *Fangman*, 2015 WL 8315704, at *7, but the Plaintiffs here also seek equitable tolling of a RESPA claim based upon Genuine Title's kickback practices. Plaintiffs' claim for equitable tolling is not "unique" let alone "extraordinary" when the underlying claims and concealment efforts are nearly identical and when the prior Genuine Title litigation and subsequent media coverage rendered critical information discoverable.

Plaintiffs have not demonstrated that their case presents one of "those rare instances where . . . it would be unconscionable to enforce the limitation period against [them] and gross injustice would result." *Cunningham*, 2018 WL 460854, at *2. Plaintiffs' counsel has already secured significant awards for their efforts to hold Genuine Title and other financial institutions accountable for violating RESPA. (*See, e.g., Fangman*, Final Approval Order regarding Wells Fargo settlement, ECF No. 411.) Genuine Title went bankrupt, and Plaintiffs do not allege that the Defendant continues to receive illegal kickback payments through deceiving Plaintiffs or their fellow class members. Plaintiffs allege that between 2009 and 2014 they were "deprived of impartial and fair competition between settlement service

providers in violation of RESPA, denied kickback-free settlement services, and paid more for said settlement services" because Genuine Title used a portion of those settlement payments to provide at least $34,000 in kickbacks to Angela Pobletts and $8,000 to Tony Sergi. (*Bezek*, Compl. ¶ 54, 55, 90, ECF No. 1.) While the purported class may have some interest in accountability and financial compensation, Congress firmly expressed an interest in providing certainty to the real estate market when it set the RESPA statute of limitations at one year.[12] Given this context, it would not be unconscionable or grossly unjust to enforce RESPA's one-year statute of limitations. To hold otherwise would "make[] Plaintiffs' counsel – and not the terms of the legislation passed by Congress – the master of the RESPA statute of limitation." (Mem. 5, ECF No. 4-2.)

The Plaintiffs therefore fail to fulfill the extraordinary circumstances element required to equitably toll their claim. *Menominee,* 136 S. Ct. at 756. Plaintiffs proffer no amendment to the pleadings that could overcome this conclusion, and no amount of discovery would aid this Court's analysis of Plaintiffs' claim for equitable tolling. As Plaintiffs have failed to establish the extraordinary circumstances element, this Court need not determine whether the Plaintiffs were diligently pursuing their rights. *Menominee*, 136 S. Ct. at 757, n.5. While the parties here earnestly contest the content of the due diligence requirement in the wake of *Menominee,* this Court finds no reason to address those contentions.

---

[12] Compare, for example, the State of Maryland's three-year statute of limitations for civil actions such as fraud or personal injury claims. Md. Code Ann., Cts. & Jud. Proc. § 5-101.

## **CONCLUSION**

For the reasons stated above, the Defendant's Motion to Dismiss (ECF No. 4) is GRANTED.

A separate Order follows.

Dated: February **2**, 2018                        _____/s/_____
                                                     Richard D. Bennett
                                                     United States District Judge