IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| JILL BEZEK, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. SAG-17-2902 |
| | * | |
| FIRST NATIONAL BANK OF | * | |
| PENNSYLVANIA, | * | |
| | * | |
| Defendant. | * | |
| | * | |

*   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM OPINION**

As this Court has explained in prior opinions, Jill Bezek and Michelle Harris (collectively "Plaintiffs") represent a class of borrowers who had a federally related loan serviced by First Mariner Bank ("First Mariner"). They sued First Mariner's successor entity, First National Bank of Pennsylvania ("Defendant"), seeking damages relating to kickbacks that First Mariner employees allegedly received from a title company, Genuine Title. Plaintiffs allege that the kickbacks violated the Real Estate Settlement Procedures Act ("RESPA") in that First Mariner's actions caused them to be overcharged for their settlement services.

This case became ready for trial after this Court adjudicated dispositive motions earlier this year. This Court conferred with the parties and asked Plaintiffs to submit a proposed trial plan. The parties submitted briefing, ECF 139–41, but upon review, this Court rejected Plaintiffs' proposed trial plan, deeming it unworkable. ECF 142. This Court then held an in-person status conference on November 7, 2023, to discuss its concerns about whether a single classwide trial is feasible.[1]

---

[1] When this Court inquired at the status conference, counsel could not identify any similar RESPA case in the country that has been brought to trial as a class action incorporating a variety of overcharge theories, as Plaintiffs suggest bringing here.

After the status conference, Plaintiffs filed a supplement at this Court's request. ECF 149. Upon

review of the parties' filings and the information gleaned at the status conference, this Court has

determined that this case cannot proceed to a classwide trial with the class as presently certified.

This Court will therefore amend the class definition *sua sponte* as described below, and will order

the parties to confer regarding an opt-out procedure to take place before the case is set for trial.

The background of this case has been reviewed in this Court's previous opinions. *See, e.g.,*

ECF 47, 115. Relevant to the instant issue, on October 2, 2020, this Court certified a class

consisting of:

> All individuals in the United States who were borrowers on a federally related
> mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12
> U.S.C. § 2602) originated or brokered by First Mariner Bank for which Genuine
> Title provided a settlement service, as identified in Section 1100 on the HUD-1,
> between January 1, 2009 and December 31, 2014. Exempted from this class is any
> person who, during the period of January 1, 2009 through December 31, 2014, was
> an employee, officer, member and/or agent of First Mariner Bank, Genuine Title
> LLC and/or Competitive Advantage Media Group LLC.

ECF 48, *see also* ECF 47 at 7–17. During class certification, Plaintiffs argued that the chart

prepared by Wells Fargo—setting forth the average, median, and 80th percentile for title service

fees—established that class members had been overcharged. *See* ECF 44 at 4 ("Plaintiff Bezek

was charged $910 for her abstract or title search, title examination, and title insurance binder,

almost three time[s] the Maryland average for these settlement services, three and a half times the

state median, and 83% above the 80th percentile of fees."). But in their summary judgment

reconsideration briefing, for the first time, Plaintiffs contended that some of the class members had

been subject to "title insurance overcharges" that, in Plaintiffs' view, resulted from the kickbacks

being paid to First Mariner loan officers. ECF 118 at 9 n.3; ECF 120 at 13–16. Plaintiffs did not

timely introduce "title insurance overcharges" as an issue in this case. ECF 142. Moreover, as this

Court has concluded in a similar case, title insurance overcharges are not amenable to classwide

disposition. *Edmondson v. Eagle Nat'l Bank*, No. 16-CV-3938, 2023 WL 5336994, at *13 (D. Md. Aug. 18, 2023). Thus, any class members wishing to establish that they were overcharged for title insurance as a result of a kickback paid to a First Mariner loan officer will have to proceed with their claim on an individual basis.

Given that trial was ready to be scheduled, this Court focused on logistics and raised several issues at the status conference: (1) that some class members may not want to forego title insurance overcharge claims or certain other theories of damages by participating in this classwide trial; and (2) that Plaintiffs propose to use a variety of different mechanisms to establish alleged overcharges to various class members, some of which are inconsistent and pose a risk of prejudicing some class members at the expense of others if tried jointly.[2] At the status hearing, Plaintiffs stated that the *Bezek* class members fall into two categories: (1) the "Pobletts group," defined as borrowers whose loans were processed at the First Mariner branch managed by Angela Pobletts; and (2) the "Wells Fargo group," borrowers whose fees for title services exceeded the 80th percentile figures listed on the relevant Wells Fargo chart.[3] As to the Pobletts group, Plaintiffs have testimony from Genuine Title's former President, Jay Zuckerberg, that he calculated his kickbacks to Pobletts by taking the charges to the borrowers on the referred loans, subtracting $500 to $600, and dividing by two. ECF 94-16 ¶ 4. Some class members belong to both the Pobletts group and the Wells Fargo

[2] For example, in their recent letter supplement, Plaintiffs argue that there are five different ways to prove overcharges for a certain subset of the class members. ECF 149 at 2–3. One way is the provision of enhanced title insurance policies, which this Court has explained in other cases is not an issue amenable to adjudication in a class action. *Edmondson*, 2023 WL 5336994, at *13.

[3] The chart was distributed to Wells Fargo's retail loan processing employees in March 2010 for use as a reference when analyzing title costs for certain types of loans. ECF 101-24 at 139:4–12, 151:5–10. Another version of the chart using updated data was distributed internally by Wells Fargo in 2013. ECF 102-2 at 90:7–11. If the title charges on a Wells Fargo retail loan exceeded the 80th percentile amount for the state where the loan was issued, this signaled to Wells Fargo employees that the cost of the title services was unreasonable. ECF 101-24 at 153:1–14. Plaintiffs claim that the chart provides an "objective measure" of the customary and reasonable costs of title services throughout the relevant period. ECF 97-1 at 40.

group because their loans were processed by Pobletts's branch and their fees exceeded the 80th

percentile number. Bezek and Harris belong to the Wells Fargo group only.

The Wells Fargo chart has been a topic of discussion throughout this litigation. *See, e.g.*,

ECF 115 at 15–22. By contrast, only at the recent status conference did Plaintiffs first explain their

theory of the Pobletts group, by describing the number of class members belonging to that group

and the anticipated method of calculating their overcharges, which are not governed by the 80th

percentile chart. This Court remains uncertain about how any calculation of overcharges would

occur, because of the generalities in Zuckerberg's description of how he paid kickbacks to Pobletts

(for example, subtracting $500 to $600 from an unspecified calculation of "[c]harges to the

borrowers"). ECF 94-16 ¶ 4. It is clear, though, that for class members who fall within both groups,

the calculation of overcharges under the Pobletts group method and the Wells Fargo group method

would lead to two different overcharge numbers.[4] ECF 47. Further, the existence of these two

inconsistent methods of determining overcharge would call both theories into question as the

appropriate way to determine whether any particular class member was overcharged. Finally, and

importantly, there is no class representative who is a member of the Pobletts group, and the existing

class representatives, Bezek and Harris, have some disincentive to forcefully advocate for the

proposed Pobletts group method of calculation, given that it is inconsistent with the Wells Fargo

theory on which they personally can recover.

Accordingly, this Court no longer believes that the class as presently defined meets the

criteria for Rule 23 class treatment. "An order that grants or denies class certification may be

---

[4] For example, a Maryland borrower who paid $1000 for settlement services might receive $250 under one permutation of a Pobletts calculation (subtracting $500 and dividing the remainder by two), but the same borrower might receive up to $503 if the Wells Fargo 2010 chart is used, since the 80th percentile figure in that chart is $497. That borrower would be disadvantaged if a jury is permitted to choose between the two theories as opposed to simply being presented with the theory that results in a greater award.

altered or amended before final Judgment." Fed. R. Civ. P. 23(c)(1)(C). "Indeed, 'an order

certifying a class must be reversed if it becomes apparent, at any time during the pendency of the

proceeding, that class treatment of the action is inappropriate." *Minter v. Wells Fargo Bank, N.A.*,

No. 07-CV-3442, 2013 WL 1795564, *2 (D. Md. Apr. 26, 2013) (quoting *Stott v. Haworth*, 916

F.2d 134, 139 (4th Cir.1990)). But "decertification is a drastic step, not to be taken lightly." *Alig

v. Quicken Loans Inc.*, No. 12-CV-114, 2017 WL 5054287, at *10 (N.D.W. Va. July 11, 2017)

(quoting 3 NEWBERG ON CLASS ACTIONS § 7:37 (5th ed. 2013)). "Even after a certification order

is entered, the judge remains free to modify it in the light of subsequent developments in the

litigation." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Piotrowski v.

Wells Fargo Bank, NA*, No. 11-CV-3758, 2015 WL 4602591, at *5 (D. Md. July 29, 2015) ("The

court possesses the power to modify the class definition."). This Court has previously amended the

class definition rather than outright decertifying a class that no longer meets Rule 23's

requirements. *See In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 863 (D. Md. 2013)

(redefining class because of typicality, commonality, and predominance concerns related to

differences in contractual relationships); *cf. In re Marriott Int'l, Inc., Customer Data Sec. Breach

Litig.*, 341 F.R.D. 128, 149 (D. Md. 2022) (concluding, at the certification stage, that certain classes

did not satisfy Rule 23's typicality requirement, but nonetheless amending the class definitions

rather than denying certification outright), *vacated on other grounds,* 78 F.4th 677 (4th Cir. 2023)*,

reinstated*, No. 19-CV-2879, 2023 WL 8247865 (D. Md. Nov. 29, 2023).

Rule 23(a) requires that (1) the alleged class is so numerous that joinder of all members is

impracticable, (2) there are questions of law or fact common to the class, (3) the representatives'

claims are typical of the claims of the class, and (4) the representatives will fairly and adequately

protect the interests of the class. After satisfying the Rule 23(a) prerequisites, the plaintiffs must

show that the proposed class action falls within one of the categories enumerated in Rule 23(b). *E.g., Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). Here, Plaintiffs sought and were granted class certification pursuant to Rule 23(b)(3). ECF 47 at 9–15; ECF 48 ¶¶ 6–7. Under that rule, a class may be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In light of the changed circumstances occasioned by the disclosure of the Pobletts group theory in preparation for trial, this Court believes that the Plaintiffs cannot fulfill the adequacy and typicality requirements to represent the presently certified class, for the reasons stated above. Moreover, a class action cannot be superior to other methods of adjudication where there will be no practical way to advise a jury on a workable method of assessing harm or calculating damages, and where convincing the jury of one theory might lead the jury to reject conflicting or inconsistent theories being asserted by other class members. However, the Plaintiffs' claims remain typical of the claims of the Wells Fargo group, and the Plaintiffs will fairly and adequately protect the interests of that group, which continues to be sufficiently numerous to warrant class treatment. This Court therefore finds it appropriate to revise the class definition to restrict it to the Wells Fargo group, which can be represented by Bezek and Harris in a manner fulfilling the requirements of Rule 23. Thus, the class certification order will be amended to define the class as:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) originated or brokered by First Mariner Bank for which Genuine Title provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2009 and December 31, 2014, and whose HUD-1 reflects the payment of title, abstract, search and/or examination services exceeding the 80th percentile cost in their state according to the then-applicable Wells Fargo Chart. Exempted from this class is any person who, during the period of January 1, 2009

through December 31, 2014, was an employee, officer, member and/or agent of
First Mariner Bank, Genuine Title LLC and/or Competitive Advantage Media
Group LLC.

This Court is persuaded that the class as redefined satisfies the requirements of Rule 23. There will

be a coherent, classwide way to prove (or, from Defendant's perspective, disprove) that each class

member has standing given a uniform theory of overcharge, and there will be no conflicts within

the proof adduced among the various class members. While the class members may have suffered

different amounts of overcharge, the jury will have a single formula to apply to determine whether

any overcharges occurred and in what amount.

This Court also considers whether this amended class definition creates an impermissible

fail-safe class, defined as "one that requires a finding of liability before ascertaining whether an

individual is a class member." *Chado v. Nat'l Auto Inspects., LLC*, No. 17-CV-2945, 2019 WL

1981042, at *4 (D. Md. May 3, 2019). Here, class membership does not depend on a finding of

liability. A jury may conclude that a borrower was charged greater than the 80th percentile amount

on the Wells Fargo chart, but that the charges reflected legitimate settlement services rather than

an illegal kickback arrangement. Or a jury may conclude that kickbacks were paid, but that some

of all of the class members were still charged the same amount they would have otherwise paid

without suffering any additional overcharge, particularly given the unregulated capitalistic

business model employed by these companies. In no sense, then, does meeting the criteria for

membership in this class establish that a member has a valid claim. It simply demonstrates that the

class member's claim can be appropriately adjudicated in a Rule 23 proceeding represented by

these Plaintiffs.

Over the course of these proceedings, this Court has made rulings that might justifiably

impact the decision of one or more class members to proceed with adjudicating their claims against

Defendant within the confines of this class action. Specifically, if class members believe that they might recoup higher damages under the Pobletts theory of calculation than the Wells Fargo theory of calculation, or if they believe they have title insurance overcharge damages that are excluded from this class action, they might now wish to opt out of this class and proceed to trial on an individual basis. This Court therefore will order that an opt-out notice be disseminated to the remaining class members to advise them of the fact that they may forfeit their opportunity to raise certain damages claims by remaining in this class action. The parties should also consider whether the class members should be advised of the possibility that they will be asked to appear and testify at trial, given Defendant's intention to call 25 class members as defense witnesses. The order accompanying this opinion will direct the parties to confer to try to agree on the form and substance of an opt-out notice. After receipt of a status update from the parties, this Court will schedule a status conference promptly to discuss any issues on which the parties cannot reach agreement. Unfortunately, scheduling of a trial date must await the completion of the opt-out procedure. Given the advanced age of this case, however, this Court intends to enforce an expedited schedule.

For the foregoing reasons, this Court will enter a separate order amending the class certification order as described herein. The order will also direct the parties to confer regarding the form and prompt issuance of an opt-out notice fairly advising remaining class members that they may be foregoing certain categories of damage claims by choosing to proceed in this class action versus pursuing an individual case.

Dated: December 13, 2023
                                                          /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge